RECEIVED
USDC, CLERK GREENVILLE. S(
2019 AUG 16  PM 12: 55

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## GREENVILLE DIVISION

William C. Burnham,

           *Plaintiff,*

v.

Universal Health Services, Inc.;
UHS of Greenville, L.L.C. a Delaware
registered company;
UHS of Greenville, L.L.C. a South
Carolina registered company
d/b/a/ Carolina Center for
Behavioral Health.

           *Defendants.*

CIVIL ACTION

NO:_____

NON EM/ECF CASE

JURY TRIAL DEMANDED
ON ANY ISSUE TRIABLE
Fed. R. Civ. P. 38. (b)

ORIGINAL COMPLAINT
Fed. R. Civ. P. 3.

## INTRODUCTION

1.     William C. Burnham, (herein after referred to as the ("Plaintiff") hereby submits an Original Complaint.  This is a civil suit seeking to enjoin the violations of the rights and privileges of Plaintiff under Title III of the Americas with Disabilities Act, 42 U.S.C. § 12181, et seq.  (herein after referred to as the "ADA"), the Rehabilitation Act, 29 U.S.C. § 794(a) et seq.  (herein after referred to as the "Rehab Act"), and pursuant to 28 U.S.C. § 1367(a) supplemental jurisdiction over non-federal claims in regard to the statutory language associated with South

Carolina Bill of Rights for Handicapped Persons as set forth in S.C. Code § 43-33-510 et seq. and the regulatory language associated with South Carolina Department of Health & Environmental Control. Inpatient Facilities that Treat Individuals for Psychoactive Substance Abuse or Dependence DHEC Regulation 61-93s sub-parts afore referenced in *Id.* ¶ 107. A judicial declaration pursuant to Fed. R. Civ. P. 57. is necessary and appropriate at this time in order that the parties may know their respective rights and duties and act accordingly. Plaintiff seeks Injunctive Relief that is critical to stopping Defendants conduct.

2.     On July 26, 1990, President Bush signed the Americans with Disabilities Act, establishing the most important civil rights law for persons with disabilities in our country's history intended to signal the end to unjustified segregation and exclusion of persons with disabilities from mainstream American life. We must give effect to the unambiguously expressed intent of Congress.

3.     The ADA became effective as to Universal Health Services Inc. Delaware, Parent Corporate Entity for UHS of Greenville L.L.C. a Delaware registered company; UHS of Greenville, L.L.C. a South Carolina registered company d/b/a Carolina Center for Behavioral Health, (herein after referred to as the ("Defendants") on January 26, 1992, in spite of this abundant lead time and the extensive publicity the ADA has received since 1990; The Publication of the (DOJ) Title III Technical Assistance Manual (1993) and Supplement (An 83-page manual that explains in lay terms what businesses and non-profit agencies must do to ensure access to their goods, services, and facilities); The Publication of the (DOJ) and (HHS) Access To Medical Care For Individuals With Mobility Disabilities. (accessibility of doctors' offices, clinics, and other health care providers with (diagram's)) (2010); The Publication of Increasing the Physical Accessibility Of Health Care Facilities Centers for Medicare & Medicaid (CMS)

office of Minority Health. (OMH)  (2017).  (overview of physical accessibility of health care facilities).  Various federal agencies provide resources, information, and in some cases funding to promote improved accessibility for people with disabilities.  Defendants have failed with all the resources available.

4.     Despite federal requirements that health care providers ensure equal access to programs, services, and facilities for people with disabilities, physical accessibility remains a considerable challenge.  One of the most prominent challenges for people with physical disabilities is overcoming the barriers to entering and navigating health care facilities, including inaccessible entrances, hallways, examination rooms, medical equipment, and restrooms.  Defendants have failed in all of the above areas.

5.     There is a clear need for increased awareness among medical professionals and staff on how to increase access to care and improve quality of care for individuals with disabilities.  The Urban Institute's Health Reform Monitoring Survey showed that 24.2 percent of adults with disabilities reported experiencing disrespectful treatment or felt judged unfairly.  In comparison, only 8.1 percent of the general population reported experiencing this disrespectful treatment.  Defendants have failed as professionals in their limited knowledge about how to accommodate persons with disabilities described above.

6.     In March of 2015, Universal Health Services, Inc. revealed that it is under investigation as "a corporate entity" by the U.S. Department of Justice Criminal Fraud Section.

7.     UHS and 25 of its behavioral health facilities were also the subject of a coordinated civil investigation by federal authorities.

8. The Office of the Inspector General (OIG) in the Department of Health and Human Services issued subpoenas to UHS and 10 of its facilities in February 2013, and the (OIG) and the Justice Department have steadily expanded the probe since then. UHS has disclosed some expansion of the federal investigation, including additional subpoenas, payment suspensions and criminal fraud investigations.

9. UHS received notice in December, 2015, that the DOJ opened an investigation involving the El Paso Behavioral Health System in El Paso, Texas.

10. The DOJ investigated potential "Stark Law" violations relating to arrangements between the facility and physicians at the facility. In February 2017, El Paso Behavioral Health System reached a $860,000 settlement with the DOJ to resolve these allegations.

11. The U.S. Department of Defense (DOD) and the Federal Bureau of Investigation (FBI) joined the multi-Federal agency investigations into the largest psychiatric hospital chain owned by Universal Health Services, Inc. (UHS). The agencies are "scrutinizing UHS's billings to Tricare, the insurance plan for active duty military and their families," investigators have cited "troubling reports suggesting a pattern of quality of care issues" or "harm to patients" in some UHS facilities operating in a dozen states.

12. In April 2017, Senator Charles Grassley, chairman of the Senate Judiciary Committee, also called for a federal probe into UHS's behavioral facilities, describing one Tulsa, Oklahoma facility, Shadow Mountain Behavioral Health, as having "a pattern of conduct that is extremely concerning and casts a dark cloud over UHS's ability to properly care for its patients."

13. Five years after the Federal investigations began UHS's track record hasn't changed. On April 10, 2017, the state of Massachusetts filed a suit against

UHS in federal court, accusing it of illegally charging Medicaid for outpatient mental health care by unqualified staff.

14.    The aforementioned ¶ ¶ 5-through-12 enlightens the deceptive bent of mind of the corporate level Defendant's.

15.    This suit is not based upon prior public disclosures of allegations or transactions in a criminal, civil, or administrative hearing, lawsuit or investigation, or in a Government Accounting Office or Auditor General's report, hearing, audit, or investigation, or from the news media, or any action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 et seq.

16.    Plaintiff has direct and independent knowledge of the information on which the allegations in this compliant are based.

17.    Plaintiff attempted to resolve this matter without a lawsuit but was unable to obtain a commitment from Defendants.

## JURISDICTION

18.    Jurisdiction of this court is invoked pursuant to 28 U.S.C. §§ 1331, 1343(a)(4) conferring original jurisdiction upon this court over any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of civil rights, and under the Declaratory Judgment Statute, 28 U.S.C. § 2201(a)- 2202, 29 U.S.C. § 794(a) and 42 U.S.C. § 12188(a)(2).

19.    This Court has supplemental jurisdiction over the non-federal claim that have the same nucleus of operative fact pursuant to 28 U.S.C. § 1367(a) because Plaintiff asserts claims under the South Carolina Bill of Rights for Handicapped Persons as set forth in S.C. Code § 43-33-510 et seq. which are so related to the claims in the action within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

## VENUE

**20.**    Venue is proper in the District of South Carolina pursuant to 28 U.S.C. §
1391(a)(2), because a substantial part of the events or omissions giving rise to the
claims occurred within the geographical area that makes up the Greenville Division
of the United States District Court for the District of South Carolina and
Defendants are subject to personal jurisdiction in the Greenville, Division because
they do substantial business in this judicial district.

**21.**    Local Civ. Rule 3.01(A) (D.S.C.). Division Assignment. All civil cases
must be assigned to that division of the district. Local Civ. Rule 3.01(A) (1)
(D.C.S.) Where any natural defendant resides, where a substantial part of the
events or omissions giving rise to the claims' occurred, or where any corporate
and/or other organization defendants do business relating to the events or
omissions alleged.

**22.**    Defendants, either through chain of ownership or directly, are registered
to do business in South Carolina; have an office in Greer, South Carolina; conduct
business in Greenville County; employ over sixty employees; and are subject to the
jurisdiction of this honorable Court.

## 4TH FEDERAL CIRCUIT COURT OF APPEALS PUBLISHED PRECEDENTIAL CASE

**23.**    The Supreme Court acknowledged years ago, the "enforcement [of civil
right laws] would prove difficult" and our country will be obliged "to rely in part
upon private litigation as a means of securing broad compliance." See Newman v.
Piggie Park Enters., 390 U.S. *id* at 400, 401 (1968). That very principle is also
embodied in the ADA. See Dudley v. Hannaford Bros., 333 F.3d *Id* at 306-307
(discussing importance of private litigation in achieving broad compliance with the

ADA).  (1st Cir. 2003) cited by (4th Cir. 2017) in Nanni v. Aberdeen Marketplace Inc., NO 16-1638.  In the community of those citizens who are wheelchair, bound the identification of public accommodations facilities that flout the ADA is obviously important.  See Nanni v. Aberdeen Marketplace, Inc., (4th Cir. 2017). Furthermore, as the (4th Cir.) recognized in the unpublished decision in Daniels v. Arcade, L.P., 477 Fed. Appx. Id at 125, 129-130 (4th Cir. 2012), and emphasize again in Nanni v. Aberdeen Marketplace, Inc. a citizen's "right to sue and defend in the courts is one of the highest and most essential privileges of citizenship and is granted and protected by the Federal Constitution."

## PLAINTIFFS STANDING

24.    Plaintiff has standing to bring claims for injunctive relief because: (1) he has `suffered an injury in fact and faces a real threat of imminent -- not conjectural or hypothetical -- future harm; (2) the injuries of which Plaintiff complains were caused by Defendant; and (3) these injuries will be redressed by a favorable decision.  See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992).  Plaintiffs standing is like that of any plaintiff in a public accommodations case Plaintiff has patronized the facilities in the past and will patronize them in the future.

## THE FIVE ELEMENTS OF PLAINTIFFS ADA CLAIM

25.    To state an ADA claim, a plaintiff must adequately allege at least five elements: (1) the plaintiff has a disability; (2) the place that the defendant owns, leases, or operates is a place of public accommodation; (3) the plaintiff was denied full and equal enjoyment because of his disability; (4) the existing facility at the defendants' place of business presents an architectural barrier prohibited under the ADA; and (5) the removal of the barrier is readily achievable.

26.     Reinforced in the ADA context is the provision of that law that states, nothing in this section shall require a person with a disability to engage in a futile gesture if such person has actual notice that a person or organization covered by this subchapter does not intend to comply with its provisions." 42 U.S.C. § 12188(a)(1).

27.     The violations and conduct Plaintiff will bring to light below deter and discourage him from returning to the Hospital for reasons including, but not necessarily limited to, the following below referenced violations make it difficult or impossible for Plaintiff to enter front entrance, dine, toilet, shower, navigate his room at the hospital unless he twists, struggles and strains himself and puts Plaintiff at risk of injury.  All these things negatively affect Plaintiffs sense of independence and can lead to humiliating accidents, derisive comments, embarrassment, a loss of dignity, and feelings of being stigmatized as different or inferior.

28.     Plaintiff will return to the hospital without hesitation when the conduct and barriers herein have been removed or cured to seek attention for his mental health issues.

29.     As one legal scholar explained the similarity: a single step in front of a store may not immediately call to mind images of Lester Maddox standing in the door of his restaurant to keep blacks out.  But in a crucial respect they are the same, for a step can exclude a person who uses a wheelchair just as surely as a no blacks-allowed rule can exclude a class of people.  Samuel Bagenstos, *The Perversity of Limited Civil Rights Remedies: The Case of "Abusive" ADA Litigation* 54 (U C L A) L. Rev. 1, 23 (2006).

30.     Title III of the ADA, 42 U.S.C. §§ 12181 – 12189, and its implementing regulation, 28 C.F.R. Part 36, prohibit public accommodations, including hospitals, from discriminating on the basis of disability in the full and equal enjoyment of their goods, services, facilities, privileges, advantages or accommodations.

31.     Defendants have discriminated and continues to discriminate against Plaintiff in many ways, including but not limited to failing to ensure that facilities are accessible to individuals with mobility impairments who require wheelchairs and/or ambulatory devices for mobility.

32.     The retaliatory conduct by Jonathan Michael Snipes, MD…  Conduct that encompasses violations of 29 U.S.C. § 794(a) and/or 42 U.S.C. § 12203(a). Prohibition against retaliation and coercion.  No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

## PARTIES

33.     Plaintiff William C. Burnham, is and has been at all times material hereto an adult resident of the United States and the State of South Carolina, Greenwood County.

34.     Plaintiff is presently diagnosed as a multi-disabled individual who is severely mobility impaired, including but not limited to amputee left leg at the hip and physical impairments in both hands.  Plaintiff has physical impairments that substantially limit several major life activities, including but not limited to walking and using his hands.  Plaintiff has a record of physical impairments that substantially limit several major life activities and is regarded as having physical

impairments that substantially limit several major life activities. Plaintiff uses a wheelchair (proscribed and documented by (4) physicians) and has a disability within the meaning of the ADA. 42 U.S.C. § 12102(2) (A), (B) and (C).

**35.** Plaintiff may be served with all responsive pleadings to this civil action at 211 Morgan Avenue, Greenwood, S.C 29646.

**36.** Defendant Universal Health Services, Inc. is a private for-profit mental health system and is a corporation under the laws of the state of Delaware whose principal place of business is Universal Corporate Center, 367 South Gulph Road, King of Prussia, Pennsylvania, 19406.

**37.** Defendant Universal Health Services, Inc., is a holding company that operates through its subsidiaries, including its wholly-owned management company, Defendant UHS of Delaware.

**38.** Defendant Universal Health Services, Inc. may be served with summons and complaint by and through the entity's registered agent: Corporation Service Company, 251 Little Falls Drive Wilmington, Delaware, 19808 and/or Executive Office Universal Corporate Center, P.O. Box 61558, 367 South Gulph Road, King of Prussia, Pennsylvania 19406.

**39.** Defendant UHS of Greenville L.L.C. is a limited liability corporation incorporated under the laws of the state of Delaware whose principal place of business is 367 South Gulph Road, King of Prussia, Pennsylvania, 19406. UHS of Delaware, is a wholly-owned subsidiary of Universal Health Services, Inc...

**40.** Defendant may be served with summons and complaint by and through the entity's registered agent: Corporation Service Company, 251 Little Falls Drive Wilmington, Delaware 19808 and/or Executive Office Universal Corporate Center, P.O. Box 61558, 367 South Gulph Road, King of Prussia, Pennsylvania 19406.

**41.**    At all times relevant, the operations of UHS of Greenville, L.L.C. d/b/a Carolina Center for Behavioral Health, were so intertwined with those of Universal Health Services, Inc. that the two companies were effectively one entity.

**42.**    Defendant UHS of Greenville, L.L.C. d/b/a/ Carolina Center for Behavioral Health, is a wholly owned subsidiary of Defendant UHS of Delaware.

**43.**    Defendant UHS of Greenville, L.L.C. d/b/a Carolina Center for Behavioral Health, 2700 E. Phillips Rd. Greer, SC 29650 may be served with summons and complaint by and through the entity's registered agent:  Corporation Service Company, 1703 Laurel Street Columbia, South Carolina 29201.

**44.**    At all times described in this complaint, each and all of the Defendants owned and/or operated and/or developed and implemented policies, rules and regulations for the operation of the Carolina Center for Behavioral Health, that effected the denial of the ADAs implementing laws and regulations mentioned throughout this compliant.

**45.**    Defendants are subject to Title III because it is a "private" entity that owns, leases, or operates a place of public accommodation.  Defendants fall squarely in 42 U.S.C. § 12181 (7)(f) 28 C.F.R. § 36.104(6).

## STATEMENT OF FACTS

**46.**    On or about April 15, 2018, Plaintiff was evaluated and admitted to Defendants facility.

**47.**    Plaintiff was given a wheelchair upon entering the facility, Plaintiff found he had to navigate doors throughout the facility that he could barely get through. As a matter of fact, Plaintiff hit his right hand passing through some doors.

**48.**    Plaintiff was assigned a room.  Once in the room Plaintiff found that he
had to bang into beds to navigate his room with no accessible routes.  Entering the
toilet and bathing room was impossible in his wheelchair.

**49.**    Plaintiff found in dismay this was indicative of the entire facility no
accessible paths of travel.

**50.**    On or about April 23, 2018, Plaintiff started to complain and file written
complaints.

**51.**    As a result of the ADA complaints filed by Plaintiff, he was informed by
Jonathan Michael Snipes, M.D. " if you ever come back to the Carolina Center you
will be confined in the worst part of the facility unit (5) and Plaintiff would stay for
the duration." He was provocative in his demeanor and made it clear to Plaintiff
that he was taking this action due to the written internal ADA complaints filed by
Plaintiff.  Plaintiff does not meet criteria for unit (5).   Plaintiff then informed Dr.
Snipes, he had filed an ADA lawsuit pro se in the United States District Court for
the Northern District of Georgia Gainesville Division.  Dr. Snipes then had every
document in my wallet gone through and inventoried for harassment and to
illegally obtain personal information.  Dr. Snipes, conduct would chill a person of
ordinary firmness in the setting Plaintiff was in from pursuing any more ADA
complaints.

**52.**    Plaintiff was afraid to pursue any more ADA complaints because of the
threat by Jonathan Michael Snipes, M.D. License No: 30931, Medical Board,
South Carolina Board of Medical Examiners listed Hospital Affiliations: Carolina
Center for Behavioral Health, where he is employed as a full-time psychiatrist and
has (3) full-time supervisee's who work under him.

**53.**     Plaintiff left the facility early because of the non-ADA compliance. Plaintiffs requests and complaints were submitted in writing and has given the entity fair advanced notice.

**54.**     Plaintiff at the Carolina Center for Behavioral Health, encountered conduct and barriers to access, in (3) different units Plaintiff was transferred: (1) Dual diagnosis unit; (2) Detox unit; (3) (28) day program unit; that includes but not limited to:

  (a.)     Violation of 42 U.S.C. § 12203(a).  Retaliatory conduct.  Defendants exhibited deliberate indifference and knew that harm to a federally protected right was substantially likely and failed to act on that likelihood.

  (b.)     (2010 Standards) refer to the DOJ Accessibility Guidelines for Buildings and Facilities (36 CFR Part 1191, Appendices B and C) along with 28 CFR Part 36, Subpart D, the New Construction and Alterations portion of Title III (all hereinafter referred to as the "2010 Standards" or "Accessibility Standards") dictate that property owners and operators of commercial premises being used as "commercial establishments" are responsible for complying with these Federal Accessibility Standards.

  (c.)     Plaintiff encountered unlawful and discriminatory barriers including, but not necessarily limited to, the following: the parking lot does not have at least one properly striped van accessible space at least 11 feet wide with an access isle of at least 5 feet wide or at least 8 feet wide with an access isle of at least 8 feet wide in violation of the (2010 Standards), § 208. 2, 502.2, 502.3, 502.3,3, 208.3.1.

  (d.)     There are no parking stall access aisles adjoining an accessible route in violation of the (2010 Standards), § 502.3.

(e.)    Inaccessible public entrances and entrances to outside reactional areas with a vertical threshold change in level greater than 1/4 inch, in violation of the (2010 Standards) § 404,2.5 (or alternatively, to the extent that the Premises had an accessible entrance, the inaccessible entrance lacked signage directing persons to the accessible entrances,) in violation of the (2010 Standards) § 404.2,5.

(f.)    Defendants failed:  (2010 Standards) § 805. Medical Care and Long-Term Care Facilities.  (2010 Standards). § 805.1 General.  Medical care facility and long-term care facility patient or resident sleeping rooms required to provide mobility features shall comply with § 805.

(g.)    § 223. Medical Care and Long-Term Care Facilities § 223.1 General.  In licensed medical care facilities and licensed long-term care facilities where the period of stay exceeds twenty-four hours, patient or resident sleeping rooms shall be provided in accordance with 223.

(h.)    § 223.2 Hospitals, Rehabilitation Facilities, Psychiatric Facilities and Detoxification Facilities shall comply with § 223.2.

(i.)    Medical care facility and long-term care facility patient or resident sleeping rooms required to provide mobility features shall comply with (2010 Standards) § 805.2 Turning Space.  Turning space complying with (2010 Standards) § 304. shall be provided within the room.

(j.)    Defendants failed:  (2010 Standards) § 805.3 Clear Floor or Ground Space.  A clear floor space complying with § 305. shall be provided on each side of the bed.  The clear floor space shall be positioned for parallel approach to the side of the bed.  (2010 Standards) § 805.4.

(k.)    Defendants failed:  Toilet and Bathing Rooms.  Toilet and bathing rooms that are provided as part of a patient or resident sleeping room shall comply with

(2010 Standards) § 603.  Where provided, no fewer than one water closet, one lavatory, and one bathtub or shower shall comply with the applicable requirements of the (2010 Standards) § 603. through § 610.

(l.)    Defendants failed:  Cafeteria used by all units:

(m.)    § 904.5 Food Service Lines.  Counters in food service lines shall comply with 904.5.

(n.)    § 904.5.1 Self-Service Shelves and Dispensing Devices.  Self-service shelves and dispensing devices for tableware, dishware, condiments, food and beverages shall comply with 308.

(o.)    § 904.5.2 Tray Slides.  The tops of tray slides shall be 28 inches (710 mm) minimum and 34 inches (865 mm) maximum above the finish floor or ground.

(p.)    Dining surfaces:  Defendants do not provide 5 percent accessible dining surfaces dispersed throughout the cafeteria, with clear floor space at a minimum of 30 inches wide and a minimum of 48 inches deep positioned for a forward approach, knee and toe clearance extending a minimum of 17 inches under the dining surface, and a dining surface 28 inches minimum and 34 inches maximum above the finish floor in violation of (2010 Standards) §§ 226.1, 226.2, 305, 306, 902.2, 902.3.

(q.)    No lowered portion of the Hospitals service counters for dispensing medications.  (2010 Standards).  Requiring that service counters provide a space that is accessible to patients who use wheelchairs, which is no higher than 36 inches above the floor.  §§ 904.4.1 and 904.4.2.

(r.)    Front reception desk at main entrance that would not be accessible to an individual who uses a wheelchair or in compliance with §§ 227.3, 904.4 of the (2010 Standards).

55.    On information and belief, it was readily achievable for Defendants to make the above-referenced alterations ¶ ¶ a-through-r for patients who use wheelchairs.

56.    The above-referenced ¶ ¶ a-through-r or not in conformance with the ADA, Standards for Accessible Design.  (2010 Standards).

57.    On information and belief, the Carolina Center for Behavioral Health, since January 26, 1992, has undergone alterations that affected, or could have affected, the usability.

58.    The term "alteration" is defined as "a change to a building . . . including remodeling, renovation, rehabilitation, reconstruction, historical restoration, changes or rearrangement of the structural parts or elements, and changes or rearrangement in the plan configuration of walls and full-height partitions." 28 C.F.R. Part. 36, app. A § 3.5.

59.    Public accommodations and commercial facilities must follow the requirements of the (2010 Standards), including the Title III regulations at 28 C.F.R. Part 36.

60.    Compliance dates for new construction and alterations.  Applicable standards on or after January 26, 1993, and before September 15, 2010, 1991 standards.  On or after September 15, 2010, and before March 15, 2012, 1991 standards or 2010 standards.  On or after March 15, 2012, 2010 Standards.

61.    The Carolina Center for Behavioral Health accepts Medicare and Medicaid. Plaintiff has concrete plans and need to return to the Defendants to use his benefits.

62.    Plaintiff has had many admissions to psychiatric hospitals, a great number of them in South Carolina. Plaintiff has many diagnoses pursuant to the American Psychiatric Association. (2013). Diagnostic and statistical manual of mental disorders (5th ed.). Plaintiff lives with constant depression, anxiety, panic, post-traumatic stress disorder, and feelings of hopelessness. Plaintiff has a right to seek medical care, outpatient and inpatient, that encompasses mental health settings. Defendants send a message to Plaintiff you cannot go to the closest hospital in the area you live because we don't want to comply with federal and state law. There is no difference in Plaintiff seeking a psychiatric hospital than if he were seeking a hospital for a physical illness. Not allowing Plaintiff to return to Defendants hospital would simply be suspicious. Plaintiff as a beneficiary of Medicare and Medicaid can invoke the rights afforded him by the afore-said providers to obtain medical care of his choosing.

63.    Plaintiffs proximity to the hospital from the Plaintiff's address is within 50 miles.

64.    The Plaintiff's past patronage of defendant's hospital, was cut short because of ADA violation's. The Plaintiff has definite need and plains to return.

## FIRST CLAIM FOR RELIEF
## AMERICANS WITH DISAILITIES ACT 42 U.S.C. § 12181 et seq.

65.    Plaintiff re-alleges the above paragraphs as if fully restated herein.

66.    Title III of the ADA provides that "No individual shall be discriminated against on the basics of disability in the full and equal enjoyment of the goods,

services, facilities, privileges, advantages, or accommodations of any place of public accommodations by any person who owns, leases, (or leases to), or operates a place of public accommodations". 42 U.S.C. § 12182(a).

**67.**    Defendant's Carolina Center for Behavioral Health, is a privately-owned medical facility and is a place of public accommodation because it is a professional office of a health care provider. 42 U.S.C. § 12181(7)(F), 28 C.F.R. § 36.104(6).

**68.**    Professional office of a health care provider means a location where a person or entity regulated by a State to provide professional services related to the physical or mental health of an individual makes such services available to the public. 28 C.F.R. § 36.401(d)(1)(i).

**69.**    Defendants have discriminated against Plaintiff. Defendant's discriminatory conduct includes but is not limited to:

(a.)    Defendants subjected Plaintiff to materially adverse acts of retaliation in violation of 42 U.S.C. § 12203(a).

(b.)    Discriminatory exclusion and/or denial of goods, services, facilities, privileges, advantages, accommodations, and/or opportunities 42 U.S.C. §12182(b)(1)(A)(i); 28 C.F.R. § 36.202.

(c.)    Provisions of goods, services, facilities, privileges, advantages, and/or accommodations that are not equal to those afforded non-disabled individuals 42 U.S.C. § 12182(b)(1)(A)(iii); 28 C.F.R. § 36.202

(d.)    With respect to facilities already in existence on or before the effective date of the ADA, discrimination includes the failure to remove architectural barriers where it would be "readily achievable" to do so. 42 U.S.C. § 12182(b)(2)(A)(iv);

(e.)    The "readily achievable" standard is a highly fact-specific one, requiring an analysis of the cost of the action needed and the financial resources of the defendant.  42 U.S.C. § 12181(9).

(f.)    Failing to make alterations in such a manner that, to the maximum extent feasible, the altered portions of the Carolina Center for Behavioral Health, are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs 42 U.S.C. § 12183(a)(2).

70.    As such, Defendants discriminate and, in the absence of the injunction requested herein, will continue in the future to discriminate against Plaintiff.

71.    The Carolina Center for Behavioral Health, is in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq. and/or its implementing regulations 28 C.F.R. Part 36.

72.    Defendant's violations of the ADA have harmed and will continue to harm Plaintiff in the future.

73.    Unless this Court enjoins Defendants from continuing to engage in these unlawful practices, Plaintiff will continue to suffer irreparable harm.

74.    Pursuant to the remedies, procedures, and rights set forth in 42 U.S.C. § 12188(a)(2), Plaintiff prays for relief as set forth below.

## SECOND CLAIM FOR RELIEF
## VIOLATION OF § 504 OF THE REHABILITATION ACT 29 U.S.C. § 794(a)

75.    Plaintiff re-alleges the above paragraphs as if fully restated herein.

76.    Defendants are subject to the Rehabilitation Act that became effective in 1973, and § 504 of the act provides that no otherwise qualified individual with a

disability shall be excluded from the participation in, or be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance. 29 U.S.C. § 794(a). 45 C.F.R. § 84.4(b)(1)–(b)(1)(ii)

77.    Plaintiff is an individual with a disability within the meaning of Section 504, at 29 U.S.C. §§ 705(9)(B) and 705(20)(B)(i)(ii) and (iii). 45 C.F.R § 84.3(j). Under both Americans with Disabilities Act, 42 U.S.C.§ 12101 et seq., and Rehabilitation Act, 29 U.S.C. § 794, virtually identical requirements are imposed to show that person is disabled.

78.    Included in the Rehabilitation Act's definition of "program or activity" are "all of the operations of an entire corporation or other private organization which is principally engaged in the business of providing health care " 29 U.S.C. § 794(b)(3)(A)(ii).

79.    According to Universal Health Services, Inc. form 10-K annual report for the fiscal year ended December 31, 2018, with the United States Securities and Exchange Commission Annual Report Pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934.

(a.)    Available Information: We are a Delaware corporation that was organized in 1979. *Since organization of company in 1979, Rehab Act was in full force and effect in the United States.*

(b.)    Sources of Revenue: We receive payments for services rendered from the government under the Medicare program, state governments under their respective Medicaid programs.

80.    Defendants are recipients of federal financial assistance from HHS, including through its participation in the Medicare (Title XVIII of the Social

Security Act, 42 U.S.C. § 1395 et seq.) and Medicaid (Title XIX of the Social Security Act, 42 U.S.C. § 1396 et seq.) programs.

81.    Upon information and belief, Defendants agreed to comply with all Required Assurance of Compliances. 45 C.F.R. § 84.5(a). The applicant provides this assurance in consideration of and for the purpose of obtaining Federal grants, loans, contracts, property, discounts or other Federal financial assistance from the U.S. Department of Health and Human Services (HHS).

82.    The effective date of the original § 504 regulations by (HEW) regarding accessibility standards was June 3, 1977. 42 Fed. Reg. 22676 (May 4, 1977).

83.    Upon information and belief, the Defendants have engaged in new construction and/or alterations after June 3, 1977.

84.    Defendants have failed to comply with the original § 504 regulations that required compliance with the American National Standards Institute (ANSI) A117.1-1961® 1971.

85.    Carolina Center for Behavioral Health, violates section 504 by failing to comply with construction standards under the Rehabilitation Act similar to the ADA's 2010 standards. The Rehabilitation Act's implementing regulations adopt the Uniform Federal Accessibility Standards ("UFAS"), 28 C.F.R. § 42.522(b). Section 42.522(b) provides that, effective as of March 7, 1988, . . . construction or alteration of buildings shall comply with the UFAS. Recipients of existing facilities, like the Carolina Center for Behavioral Health, must ensure that a program, when viewed in its entirety, is readily accessible to and usable by handicapped persons. 28 C.F.R § 42.521 (a). That requirement can be met through redesign of equipment, alteration of facilities, or any other method that results in making the program accessible to handicapped persons. Section 42.521

(b).  Defendants have failed the above-referenced in regard to "when viewed in its entirety" program is "not" readily accessible and usable by handicapped persons.

86.    Plaintiff with respect to services is a person with a disability who meets the essential eligibility requirements for receipt of Defendants services.  45 C.F.R. § 84.3(4).

87.    Defendants have no grievance procedures pursuant to 45 C.F.R. § 84.7(a) and (b).

88.    In acting in the manner described above, the Defendants have unlawfully discriminated against plaintiff in violation of the Rehab Act.

89.    Defendants were deliberately indifferent.  Defendants had notice of their duty to comply with 28 C.F.R. § 42.521 based on the very existence of the regulation.  The failure to act was the result of conduct that is more than negligent, and involved an element of deliberateness.

90.    The Rehab Act does not have an anti-retaliation provision of its own. However, it does provide that: The remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964 (42 U.S.C. § 2000(d) et seq. shall be available to any person aggrieved by any act or failure to act by any recipient of Federal assistance or Federal provider of such assistance under section 794 of this title.

91.    29 U.S.C. § 794 (a)(2).  This provision thus incorporates the anti-retaliation provision of Title VI of the Civil Rights Act of 1964.  In turn, the anti-retaliation provision of Title VI is set forth in the implementing regulations, and provides:

92.    No recipient or other person shall intimidate, threaten, coerce, or discriminate against any individual for the purpose of interfering with any right or

privilege secured by section 601 of the Act or this part, or because he has made a complaint, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under this part.

93.    Plaintiff was afraid to pursue any more Rehab Act complaints because of the threat and intimidation by Jonathan Michael Snipes, M.D. License No: 30931, Medical Board, South Carolina Board of Medical Examiners listed Hospital Affiliations: Carolina Center for Behavioral Health, where he is employed as a full-time psychiatrist.

94.    Defendant's violations of Section 504 of the Rehabilitation Act have harmed and will continue to harm Plaintiff in the future.

95.    Plaintiff attempted to resolve this matter without a lawsuit but was unable to obtain a commitment from Defendants.

96.    Pursuant to the remedies, procedures, and rights set forth in 29 U.S.C. § 794 (a) Plaintiff prays for judgment as set forth below.

## THRID CLAIM FOR RELIEF
## PENDENT STATE LAW CLAIM 28 U.S.C. § 1367(a) OF STATUTE FOUND IN SOUTH CAROLINA CODE § 43-33-510 PERTAINING TO RIGHTS OF DISABLED PERSONS

97.    Plaintiff re-alleges the above paragraphs as if fully restated herein.

98.    The State has adopted the "South Carolina Bill of Rights for Handicapped Persons" which prohibits discrimination with respect to public accommodations and services and guarantees the opportunity to obtain full and equal use of public accommodations and services. S.C. Code § § 43-33-520 & 43-33-530.

99.     It is the policy of South Carolina to enable persons with disabilities to achieve maximum personal independence; to use and enjoy governmental and public buildings and facilities; and to participate fully in all aspects of society.  It is also state policy to "encourage and enable" persons who are physically disabled to "participate fully in the economic life of the State." S.C. Code § 43-33-10.

100.     The definition of "disability" is the same under the South Carolina Bill of Rights for Handicapped Persons and under the federal Americans with Disabilities Act (ADA).  State law requires the definition to be interpreted in a manner consistent with federal regulations issued pursuant to the ADA.

101.     The Bill of Rights defines "handicap" as "a substantial physical or mental impairment, whether congenital or acquired by accident, injury, or disease, where the impairment is verified by medical findings and appears reasonably certain to continue throughout the lifetime of the individual without substantial change.

102.     The right to full and equal use of public accommodations, without discrimination because of a handicap, is guaranteed by S.C. Code § 43-33-520.  No person may discriminate against a "handicapped person" with respect to public accommodations or services.  S.C. Code § 43-33-530.

103.     Enforcement and Remedies:  Persons who are discriminated against can sue in the court of common pleas for injunctive relief or damages (maximum $5000 actual damages), and costs.  S.C. Code § 43-33-540.

104.     As a State licensee, the Defendants were required to operate under South Carolina Department of Health & Environmental Control.  Inpatient Facilities that Treat Individuals for Psychoactive Substance Abuse or Dependence DHEC Regulation 61-93.

105.    South Carolina maintains a Certificate of need (CON) program to ensure access and quality of care for the citizens they serve.

106.    Defendants were within close proximity of Plaintiffs admission date that a certificate of need (CON) application had been accepted for filing and publication on March 23, 2018, for UHS of Greenville, L.L.C. d/b/a Carolina Center for Behavioral Health, addition of 10 substance abuse beds for a total of 39 substance abuse beds at a project cost of $2,364,837.

107.    Defendants have failed to comply with DHEC Regulation 61-93,s various sub-parts thereof that encompasses accessibility including but not limited to:

(a.)    2216.  Bathrooms/Restrooms (II) F.  The number of bathrooms/restrooms for the disabled shall be provided whether any of the clients are classified as disabled or not in accordance with the applicable code in Section 1800.

(b.)    2222.  Ramps (II) F.  Ramps shall discharge onto a surface that is firm and negotiable by disabled persons in all weather conditions and to a location accessible for loading into a vehicle.

(c.)    2224.  Handrails/Guardrails (II) shall be installed and maintained in accordance with the applicable code in Section 1800.

108.    Defendants have failed to comply with the various statutes and regulations found in the South Carolina code pertaining to the rights of disabled persons.

109.    Pursuant to the remedies, procedures, and rights set forth in 28 U.S.C.§1367(a) by and through S.C. Code § 43-33-540.  Plaintiff prays for judgment as set forth below.

## <u>RELIEF</u>

WHEREFORE, Premises considered Plaintiff respectfully request:

(a.)     This honorable court assumes Jurisdiction;

(b.)     Declare that Defendants are operating in a manner which discriminates against individuals with ambulatory disabilities and who depend on the use of wheelchairs or mobility aids, and that Defendants fail to provide access for persons with ambulatory disabilities in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et esq.; The Rehabilitation Act 29 U.S.C. § 794(a) et esq.; The statutory language associated with South Carolina Bill of Rights for Handicapped Persons codified at S.C. Code § 43-33-510 et seq.; The regulatory language associated with South Carolina Department of Health & Environmental Control. Inpatient Facilities that Treat Individuals for Psychoactive Substance Abuse or Dependence DHEC Regulation 61-93.s sub-parts afore referenced in *Id.* ¶ 107.

(c.)     Enter a permanent injunction requiring Defendants to:

(i)     modify their policies, practices, and procedures to comply with Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et esq.; the Rehabilitation Act 29 U.S.C. § 794(a);  The statutory language associated with South Carolina Bill of Rights for Handicapped Persons codified at S.C. Code § 43-33-540 and the South Carolina Department of Health & Environmental Control. Inpatient Facilities that Treat Individuals for Psychoactive Substance Abuse or Dependence DHEC Regulation 61-93,s sub-part afore referenced in *Id.* ¶ 107.

(ii)     remove non-compliant architectural barriers at the Hospital.

(e)     That Plaintiff be allowed to amend Complaint to include any newly

discovered evidence that would be relevant to this action predicated on <u>Fed. R. Civ. P. 15.(a)(2)</u>. This honorable court should freely grant leave when justice so requires;

(f.)    Notify:  Disability Rights Section U.S. Department of Justice (DOJ) Civil Rights Division 950 Pennsylvania Avenue, N.W. – NYA Washington, D. C. 20530;

(g.)    Notify:  U.S. Department of Health and Human Services, (HHS) Office for Civil Rights Office of Minority Health (OMH) 200 Independence Avenue, S.W. Washington, D.C. 20201;

(h.)    Notify:  U.S Attorney Hon. Sherri A. Lydon, U.S. Attorney's Office District of South Carolina, Civil Division, One Liberty Square Building, 55 Beattie Place Suite 700 Greenville, S. C. 29601 of Defendants violations.  U.S. Attorney's offices across the nation are partnering with the Civil Rights Division to target their enforcement efforts on a critical area for individuals with disabilities through the Barrier-Free Health Care Initiative.  The Barrier-Free Health Care Initiative is a multi-phase plan that will involve key issues for people with disabilities, including ensuring physical access to medical buildings;

(i.)    Award Plaintiff any actual incurred costs, meaning all out-of-pocket expenses reasonably incurred in the prosecution of this action; and

(j.)    Award such alternative relief as may be just, proper and equitable.

*[Signature block on the following page]*

I, DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING
INFORMATION IS TRUE AND CORRECT.

Executed: on August 12, 2019.

By: _William C. Burnham_

William C. Burnham, pro se
211 Morgan Avenue,
Greenwood, S.C. 29646

## CERTIFICATE OF COMPLIANCE

I certify this compliant conforms with Fed. R. Civ. P. 11 (A) and (B) (1), (2), (3),
and (4).

I certify this compliant was prepared with minimum one-inch margins on all sides
in Times New Roman 14-point font with only page number footers that appear in
margins smaller than 12-point font with caption in 14-point bold font and double
space text in compliance with Format Requirements. Local Civ. Rule 1.05 (A),
(B), (C), (D), and (E) (D.S.C.).